***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Homick and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. Accordingly, the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 *********** ISSUE TO BE DETERMINED
Whether settlement agreement entered into at the mediated settlement conference on 26 August 2010 should be enforced?
 *********** EXHIBITS *Page 2 
1. Stipulated Exhibit (1), which includes a Pre-Trial Agreement, Medical Records, Pleadings and Correspondence.
2. Defendants' Exhibit (1), the parties Mediated Settlement Agreement,
3. Defendants' Exhibit (2), the Affidavit of the Mediator.
 ***********
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. This matter is subject to the North Carolina Workers' Compensation Act.
4. An employment relationship existed between plaintiff and defendant-employer on 29 January 2009.
5. Plaintiff's average weekly wage at the time of the injury was $611.03 with a compensation rate of $407.37.
6. On 26 August 2010, a mediated settlement conference was held in the Law Offices of Stefan Latorre.
7. At the hearing before the Deputy Commissioner, plaintiff testified through a Spanish language interpreter, Ms. Cecilia L. Martonffy, to whose qualifications the parties stipulated.
 *********** *Page 3 
Based upon the foregoing Stipulations, and upon the preponderance of the evidence in view of the entire record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-four (44) years of age. Plaintiff completed the fifth grade and testified through a Spanish language interpreter. Plaintiff explained that he does not speak or read English and reads only limited Spanish.
2. On 29 January 2009, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer involving his right knee. This injury occurred when a band of bricks collapsed and fell on plaintiff.
3. Defendants admitted the compensability of plaintiff's injury through the filing of an Industrial Commission Form 60. Specifically, defendants accepted as compensable an injury to plaintiff's right knee. Additionally, pursuant to their Form 60, defendants commenced paying plaintiff temporary total disability compensation.
4. On the day of his admittedly compensable accident, plaintiff sought medical treatment at Northcross Urgent Care where it was determined that plaintiff may be suffering from an anterior cruciate ligament or medial collateral ligament tear. Plaintiff was later diagnosed as having sustained a derangement of the right knee.
5. On 6 February 2009, plaintiff was examined by an orthopedic specialist at OrthoCarolina, who provided treatment for his right knee through June 2009. In June 2009, plaintiff was released to return to full-duty work with no restrictions and assigned a zero percent (0%) permanent partial disability rating to the right leg.
6. In July 2009, plaintiff was examined by Dr. Glenn Perry, an orthopedic specialist. *Page 4 
Dr. Perry initially provided conservative treatment, but eventually performed several procedures to plaintiff's right knee, including a surgical reconstruction of the medial collateral ligament with an Achilles tendon allograph.
7. Thereafter, on or about 12 August 2009, defendants reinstated payments of temporary total disability compensation when plaintiff was again medically excused from work due to his 29 January 2009 admittedly compensable right knee injury.
8. Upon completion of work hardening, Dr. Perry released plaintiff to return to full-duty work without restrictions on 15 May 2010, and assigned a fifteen percent (15%) permanent partial disability rating to his right leg.
9. On 13 May 2010, plaintiff was examined by Dr. Habashi as part of a second rating opinion. Following the examination, Dr. Habashi opined that plaintiff had reached maximum medical improvement and assigned a twenty-five percent (25%) permanent partial disability rating to the right leg.
10. On 10 June 2010, defendants filed an Industrial Commission Form 33 Request For Hearing on the basis that plaintiff had been released to return to work without restrictions by his treating physicians but had failed to do so.
11. On 28 June 2010, plaintiff was evaluated by Dr. Sajeev K. Puri, an otolaryngologist, and reported experiencing burning in his throat, a change in his voice and a persistent cough, which plaintiff related to an intubation during his knee surgery. Dr. Puri opined that it was difficult to determine which symptoms were caused by the intubation and which were caused by previous laryngeal surgeries due to a non work-related gunshot wound to plaintiff's throat in 1988.
12. On 26 August 2010, the parties participated in a mediated settlement conference *Page 5 
at the office of plaintiff's former counsel, Mr. Stefan Latorre, with Mr. Mark Crowther, a certified mediator, assisting the parties. After lengthy negotiations, the parties signed a mediated settlement agreement.
13. Mr. Don McGee, a part-owner of defendant-employer, testified that all parties signed the mediated settlement agreement and that defendants were to pay $10,000.00 in one lump sum to plaintiff and allow him to return to his former position, beginning on Monday,
30 August 2010, at the same rate of pay he was receiving at the time of his admittedly compensable injury.
14. Defendants continued to pay plaintiff temporary total disability compensation until 30 August 2010.
15. Defendants drafted a Compromise Settlement Agreement, which was then sent to plaintiff for his signature on 9 September 2010. However, plaintiff refused to sign the agreement and returned it to defendants.
16. Additionally, in early September 2010, plaintiff terminated his relationship with Mr. Latorre, and retained the services of his current counsel of record.
17. Regarding the circumstances giving rise to the mediated settlement agreement, plaintiff's former counsel Stefan Latorre testified under subpoena that he advised plaintiff about his rights under the Workers' Compensation Act, about the mediation process, and about the terms of the mediated settlement agreement. On the issue of whether plaintiff understood the settlement terms, Mr. Latorre explained that he can speak, write, read and understand Spanish fluently and has represented hundreds of Latino clients and not once required the use of an interpreter at mediation.
18. Mr. Latorre further testified that he explained all pertinent parts of the mediated *Page 6 
settlement agreement to plaintiff, who acknowledged that he understood the terms of the agreement.
19. As of the date of the hearing before the Deputy Commissioner, plaintiff had not returned to work for defendant-employer and due to a decrease in work, defendant-employer is no longer able to return plaintiff to his former position.
20. The mediated settlement agreement and the formal agreement of final settlement and release contain the language or findings required by Subsections (2) and (3) of Rule 502 of the Workers' Compensation Rules of the North Carolina Industrial Commission.
21. Based on the preponderance of the evidence in view of the entire record, the Full Commission finds that plaintiff has failed to establish by the greater weight of the competent and credible evidence any fraud, misrepresentation, undue influence, or mutual mistake related to his execution of the mediated settlement agreement and settlement of his workers' compensation case.
22. Based on the preponderance of the evidence in view of the entire record, the Full Commission finds that the mediated settlement agreement entered into by the parties and signed by plaintiff on August 26, 2010, constitutes a valid contractual agreement subject to approval by the Industrial Commission pursuant to Rule 502(1).
23. Having considered all of the relevant factors, including that plaintiff's right knee injury by accident was accepted as being compensable by defendants and the amount of consideration, the Full Commission finds that the mediated settlement agreement was not fair and just to plaintiff and, therefore, is not approved as a Compromise Settlement Agreement pursuant to the Act and Rules.
 *********** *Page 7 
Based upon the foregoing Stipulations, Findings of Fact and upon the preponderance of the evidence in view of the entire record, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 29 January 2009, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer involving his right knee. N.C. Gen Stat. § 97-2(6).
2. The North Carolina Industrial Commission is not a court of general jurisdiction. It has no jurisdiction beyond that conferred upon it by statute. N.C. Gen. Stat. § 97-77; Bryant v. Dougherty,267 N.C. 545, 148 S.E.2d 548 (1966). The approval of settlement agreements in workers' compensation cases falls within the exclusive jurisdiction of the North Carolina Industrial Commission. N.C. Gen. Stat. § 97-17; Holden v. Boone,153 N.C. App. 254, 569 S.E.2d 711 (2002).
3. The Memorandum of Agreement entered into by the parties on 26 August 2010 constituted a contractual agreement and, therefore, said agreement complied with Rule 502(2) of the Workers' Compensation Rules and was a valid contract subject to approval by the Industrial Commission pursuant to Rule 502(1). Vernon v. Steven L.Mabe Builders, 336 N.C. 425, 444 S.E.2d 191 (1994); Lemly v.Colvard Oil Co., 157 N.C. App. 99, 577 S.E.2d 712 (2003).
4. However, having considered all of the relevant factors, including that plaintiff's right knee injury by accident was accepted as being compensable by defendants and the amount of consideration, the Full Commission concludes that the mediated settlement agreement was not fair and just to plaintiff and, therefore, is not approved as a Compromise Settlement Agreement pursuant to the Act and Rules. Workers' Compensation Rule 502(1); Vernon v. Steven L. Mabe Builders,336 N.C. 425, 444 S.E.2d 191 (1994); Lemly v. Colvard Oil Co.,157 N.C. App. 99, 577 S.E.2d 712 (2003). *Page 8 
 * * * * * * * * * *
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Although the mediated settlement agreement was a valid "contract," because it is not fair and just to all parties, it is not approved as a Compromise Settlement Agreement and is hereby disapproved.
2. Due to the other outstanding issues in this matter, it is hereby referred to the Deputy Commissioner level docket for a full evidentiary hearing.
3. Defendants shall pay the costs.
This the __ day of November 2011.
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ STACI T. MEYER COMMISSIONER
 S/_____________ LINDA CHEATHAM COMMISSIONER *Page 1